UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM T. ANTEPENKO, JR.,

                Plaintiff,

v.                                            Case No. 17-cv-1211

DR. DOMROIS,

                Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 25) AND DISMISSING CASE**

The plaintiff, who is representing himself, filed this lawsuit under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. Dkt. No. 1. On October 26, 2017, the court issued a screening order, allowing the plaintiff to proceed on an Eighth Amendment deliberate indifference claim, that defendant Dr. Mark Domrois failed to address the plaintiff's repeated complaints that his dentures did not fit and caused him pain. Dkt. No. 9. The court dismissed the remaining defendants. Id. On June 8, 2018, the defendant filed his motion for summary judgment. Dkt. No. 25. That motion is fully briefed and ready for the court's decision. The court will grant the defendant's motion.

I. **RELEVANT FACTS**

The court takes the relevant facts primarily from Defendant's Amended Proposed Findings of Fact, dkt. no. 32, and from the plaintiff's sworn declaration, dkt. no. 37. The court takes additional facts from the plaintiff's sworn complaint. Dkt. No. 1. See Ford v. Wilson, 90 F.3d 245, 246-247 (7th Cir. 1996) (instructing

district courts to construe a sworn complaint as an affidavit at the summary judgment stage).

A. Parties

Plaintiff William T. Antepenko, Jr. was an inmate at Oshkosh Correctional Institution during the events described in the complaint. Dkt. No. 32 at ¶1. Defendant Dr. Mark Domrois is a licensed dentist in the state of Wisconsin and has been since 1986. Id. at ¶2. The defendant works as a dentist at Oshkosh, providing dental services to approximately 2,050 inmates. Id. at ¶¶3, 10. Between 2015 and 2017, the defendant was the only full-time dentist at Oshkosh, but there was a part-time dentist on staff. Id. at ¶9.

B. Treating the Plaintiff's Dental Issues

When he arrived at Oshkosh on September 8, 2015, the plaintiff filled out a "Dental Services Request" form ("DSR") complaining of mouth pain and an ill-fitting denture. Dkt. No. 37 at ¶5. The plaintiff did not visit the defendant for dental services until November 5, 2015, and then only after filing a second DSR a couple days before. Id.; Dkt. No. 32 at ¶16. During this exam, the plaintiff complained that his current upper denture, which Affordable Dentures in Green Bay, Wisconsin provided to the plaintiff prior to incarceration, was temporary and too loose-fitting. Dkt. No. 37 at ¶5; Dkt. No. 32 at ¶17. The defendant replaced the upper denture liner, gave the plaintiff a tube of denture adhesive, scheduled him for a dental cleaning and placed him on the waiting list for a new denture. Dkt. No. 32 at ¶¶19-20. The plaintiff and the defendant dispute the length of the wait for new dentures. Dkt. No. 32 at ¶20; Dkt. No. 37 at ¶8. The plaintiff insists

the defendant informed him that it would take a year; the defendant asserts that he informed the plaintiff that it would take four months. Id.

The defendant next saw the plaintiff on January 4, 2016 when the temporary upper denture cracked. Dkt. No. 32 at ¶23. The defendant offered to send the cracked denture to an outside lab for repair, but the plaintiff informed the defendant that he did not want the denture sent out because he needed it. Id., ¶24. The defendant repaired the cracked denture so that it was usable while waiting for a replacement. Id. at ¶27.

A few weeks later, the defendant saw the plaintiff again to start the process of getting a new upper denture made. Id. at ¶28. The defendant took a set of primary dental impressions so that the outside lab could customize an impression tray. Id. at ¶¶29-31. The defendant used that impression tray to generate impressions that ultimately resulted in a wax model of the new denture (the "wax try-in") for the defendant to try before finalizing the order. Id. The defendant made the final impressions using the tray on January 26, id. at ¶ 33, and met with the plaintiff a few weeks later to take jaw measurements and match teeth color, id. at ¶34.

On February 22, the defendant met with the plaintiff to place the wax try-in. Id. at ¶35.  The plaintiff asserts that while he informed the defendant at this appointment that he liked the shape and color of the teeth, he still found the denture ill-fitting and uncomfortable. Dkt. No. 37 at ¶9; Dkt. No. 32 at ¶35. The defendant states that he then worked with the plaintiff to adjust the upper denture. Dkt. No. 32 at ¶¶ 38-39. The defendant says that he informed the

plaintiff that his maxillary ridge was "not ideal" and that his palate was flat, which would cause issues holding the upper denture in place. Id. The defendant relates that he also informed the plaintiff that denture adhesive would probably be necessary to hold the denture in place. Id. at ¶42. After this appointment, the defendant sent the wax try-ins back to the lab so that it could complete the actual dentures. Id.

A little more than a week later, on March 2, the defendant met with the plaintiff to provide him with his new dentures. Id. at ¶43. The plaintiff alleges that the upper denture was way too big, causing his upper lip to protrude and give the appearance of "bucked-teeth." Dkt. No. 37 at ¶9. The defendant told the plaintiff that the fit may get better as he wore the denture. Dkt. No. 32 at ¶43. The defendant also followed up with the plaintiff the next day regarding the fit. Id. at ¶46. The plaintiff states that he further complained of pain, discomfort and trouble eating. Dkt. No. 37 at ¶¶9, 11-12. The defendant asserts that he then thinned out the denture for the plaintiff's comfort. Dkt. No. 32 at ¶¶47-48.

The next day, the plaintiff went back to the defendant to address the fit of the upper denture. Id. at ¶50. The defendant indicates that he informed the plaintiff that he could make adjustments, but that they would cause the denture to have a looser fit, and the plaintiff would have to use dental adhesive. Id. at ¶¶50-53. The defendant made the adjustments. Id.

The plaintiff returned three days later, again complaining of soreness from the upper denture. Id. at ¶54. The defendant made further adjustments and says that he informed the plaintiff that if it still was not better, the defendant would

4

provide the plaintiff with a soft liner. Id. at ¶¶55-60. The plaintiff came back the next day, and the defendant installed a soft liner. Id. at ¶61.

The plaintiff returned a few days later, on March 11, requesting that his upper denture have a similar shape to the old temporary denture from Affordable Dentures. Id. at ¶63; Dkt. No. 37 at ¶9. The defendant called the lab to determine how to accomplish this request, and the lab recommended that new wax try-ins be made to attempt to reset the upper denture. Dkt. No. 32 at ¶¶ 66-67. The defendant had the plaintiff come back eleven days later to fit him with the new try-ins. Id. at ¶68. The plaintiff told the defendant that the position of the teeth in the wax try-in was uncomfortable, so the defendant adjusted the teeth several times in attempt to address the plaintiff's concerns. Id. at ¶¶69-71. Ultimately, the defendant was unsuccessful in making satisfactory adjustments, so he sent out for another wax try-in, this time with smaller anterior teeth. Id. at ¶72.

The plaintiff met with the defendant on May 12 to try the new wax try-in, but the plaintiff noted that the shape of the try-in was not like his old temporary dentures from Affordable Dentures. Id. at ¶75. The defendant sent the wax try-ins back to the lab, and says that he instructed the lab to model the shape after the old temporary dentures. Id. at ¶76. Because of a mix-up in the lab, the new wax try-ins did not come in until July 5, and they came only after the defendant followed up with the lab twice. Id. at ¶¶76-79. The defendant informed the plaintiff of this delay. Id. at ¶80.

In the interim, the defendant saw the plaintiff on June 30 because the plaintiff's upper denture cracked in half. Id. at ¶81. The defendant repaired the

denture, cleaned it and gave the plaintiff two tubes of dental adhesive. Id. at ¶82. When the wax try-in finally came in, the defendant explains that he immediately noticed it was not made according to his specifications, so he sent it back with a request for the lab to call him. Id. at ¶¶ 84-85. The defendant says that when he saw the plaintiff again on July 13, he told the plaintiff that he wanted to start over with impressions for a new upper denture. Id. at ¶88. Two days later, the defendant started the process over, making new impressions. Id. at ¶89. On July 21, the defendant took final impressions to get new wax try-ins made. Id. at ¶91. The defendant indicates that when the wax try-ins came in on August 19, the plaintiff accepted them. Id. at ¶93. In contrast, the plaintiff asserts that he expressed his concerns and was ignored. Dkt. No. 1 at 5.

When the second set of completed dentures arrived on September 8, 2016, the defendant fitted them on the plaintiff. Dkt. No. 32 at ¶97. The plaintiff saw the defendant four days later, again seeking adjustments for comfort. Id. at ¶98. The defendant asserts that he informed plaintiff that he could make the adjustments, but that they would cause the dentures to loosen, and the plaintiff would have to use dental adhesive. Id. at ¶99. The plaintiff went back to the defendant on September 16, September 26, October 12 and October 17 for more adjustments, all of which the defendant made. Id. at ¶¶101-111. The plaintiff did not see the defendant for denture discomfort issues again until February 6, 2017, when the defendant made additional adjustments. Id. at ¶112. A few weeks after that, the plaintiff requested a new upper denture liner, which the defendant

6

provided. Id. at ¶115. The plaintiff was back five days later for new tissue conditioner on the upper denture. Id. at ¶119.

The plaintiff did not return to see defendant until May 22, 2017, again requesting a new liner for the upper denture, which the defendant provided. Id. at ¶121. A little more than a week later, the plaintiff requested a prescription for Fixodent because he could not afford to buy it at Oshkosh's canteen. Id. at ¶122. The plaintiff also informed the defendant that if he could not get a prescription for Fixodent, then he wanted a new upper denture made. Id. The defendant told the plaintiff that, per protocol, the plaintiff needed to buy his own dental adhesive from the canteen. Id. at ¶¶123-130. The defendant also declined to get a new denture made because the denture the plaintiff had served its purpose. Id. The defendant has not seen the plaintiff for dental services since denying his May 2017 request. Id. at ¶125.

The plaintiff filed this lawsuit on September 7, 2017, and says that he no longer asks for dental services because he filed the lawsuit. Dkt. No. 37 at ¶24. He says that he makes do with dental adhesive purchased in the canteen, but that he has still has sore spots and still has trouble eating, especially certain foods. Id. at ¶¶25, 28. He alleges that because the defendant improperly fitted him twice for dentures, he should have been sent to an off-site dentist. Dkt. No. 1 at 5.

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.  The Court's Analysis

The Eighth Amendment, made applicable to the States by the Fourteenth Amendment, prohibits the "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Where prison officials act with "deliberate indifference to serious medical needs of prisoners," their actions constitute an "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment. Id. To determine whether a prison official's actions violate the Eighth Amendment, the court considers two questions: (1) "whether a plaintiff suffered from an objectively serious medical condition," and (2) whether the official "was deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016).

1.  *Objectively Serious Medical Condition*

An objectively serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012) (internal citations omitted).

"Dental care is one of the most important medical needs of inmates." Hoeft v. Menos, 347 Fed. Appx. 225, 227 (7th Cir. 2009). Dental conditions where there is pain, disfigurement, an inability to eat and/or risk of infection may be objectively serious. See id. In the past ten years, the Seventh Circuit has considered a number of dental cases and has held the following to be objectively serious dental conditions: untreated cavities and tooth loss causing such pain that the inmate couldn't properly chew his food (id.); an improperly performed

9

tooth extraction that caused a sinus perforation preventing the inmate from closing his mouth and causing infection (McGowan v. Hulick, 612 F.3d 636, 638 (7th Cir. 2010)); a thirty-month delay in treating twelve cavities, which caused extensive pain (Smego v. Mitchell, 723 F.3d 752 756-57 (7th Cir. 2013)); and a tooth abscess (Dobbey v. Mitchell-Lawshea, 806 F.3d 938 940-41 (7th Cir. 2015)).

The court concludes that the plaintiff's ill-fitting dentures constitute an objectively serious medical need. The plaintiff alleges that his dentures cause pain and soreness, distort his appearance and cause trouble eating. Dkt. No. 37 at ¶¶9, 11-12, 25, 28. This is enough for a reasonable jury to conclude that ill-fitting dentures are a serious medical condition. The problem of ill-fitting dentures clearly needs treatment, because failure to treat the condition causes needless pain and suffering and impacts the plaintiff's ability to eat.

2. *Deliberate Indifference*

The court finds, however, that a reasonable jury could not find that the defendant acted with deliberate indifference toward the plaintiff's serious medical condition. The court must consider the prison official's subjective state of mind when determining whether the official acted with deliberate indifference. See Petties, 836 F.3d at 728.  To succeed in proving that an official acted with deliberate indifference, "a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." Id. (emphasis in original). The plaintiff also "must show more than mere evidence of malpractice." Id. The plaintiff must show that the official's choices "were so 'significant a departure from accepted professional standards or practices' that it is questionable whether

10

they actually exercised professional judgment." Stallings v. Liping Zhang, 607 Fed. Appx. 591, 593 (7th Cir. 2015) (quoting Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014)). The fact that a plaintiff disagrees with a doctor's medical judgment or course of treatment is not enough to defeat a motion for summary judgment. Id.

The record demonstrates that the defendant acted within acceptable professional standards or practices, even considering the facts in the light most favorable to the plaintiff. The plaintiff disagrees with the defendant's course of action regarding the dentures and argues that the level of care the defendant provided was not to his satisfaction. This does not constitute deliberate indifference. In Brady v. Aldrige, 493 Fed. Appx. 790, 791 (7th Cir. 2012), the plaintiff alleged deliberate indifference when the defendant dentist extracted his tooth without the benefit of a thorough exam or x-rays. Id. The Seventh Circuit held that the plaintiff's allegations "reflect[ed] merely a disagreement with [the defendant's] professional judgment and did not state a claim for deliberate indifference." Id. at 791-92. In other words, while the plaintiff in Brady felt that the defendant could have done more, the fact that the defendant did not do more was not deliberate indifference. Id.

In fact, the record here shows the *opposite* of deliberate indifference. The defendant met with the plaintiff thirty-two separate times in an eighteen-month span to address plaintiff's dissatisfaction with his dentures. Dkt. No. 26 at 21. The defendant provided the plaintiff with two separate sets of dentures, making countless adjustments and providing the plaintiff with liners and dental adhesive

as needed. Id. at 21-22. It appears that the plaintiff's maxillary ridge and flat palate make it difficult to fit him with dentures that do not require adhesive, dkt. no. 32 at ¶¶38-39, but the record shows that the defendant tried to find solutions to those problems—he sent out for several wax try-ins, thinned the dentures, repaired the dentures, and even restarted the whole process. Id. at ¶¶35-42, 47-48, 54-61, 66-72, 88-89. The record also indicates that the defendant was proactive in trying to address the plaintiff's needs, including noticing when the lab had erred, and following up with the lab when there were delays. Id. at ¶¶76-85.

The plaintiff says that he continues to be uncomfortable, to find it difficult to eat and to have deformed facial features. But he admits that he has not sought any further help from a dentist since he filed this lawsuit in the fall of 2017. He does not explain why the fact that he filed the lawsuit prevents him from returning for more help. And while the plaintiff may be correct that all of the defendant's efforts did not fully resolve the problem, he has not demonstrated that the care the defendant provided him was so lacking that it is questionable whether the defendant even exercised professional judgment. No reasonable jury could find that the defendant acted with deliberate indifference in treating the plaintiff.

The plaintiff also complains that defendant should have sent him to an outside dentist, and that the failure to do so demonstrates the defendant's deliberate indifference to his medical needs. Dkt. No. 1 at 5. The plaintiff highlights the lab's mistakes and argues that those mistakes are evidence of the

defendant's incompetence, justifying the plaintiff's need to be seen by an outside dentist. Id. This is another version of the plaintiff's disagreement with the defendant's chosen course of treatment, not a demonstration of deliberate indifference. A defendant "is not required to authorize a visit to a specialist in order to render constitutionally acceptable medical care." Pyles, 771 F.3d at 411. Sending a prisoner to a specialist "involves the exercise of medical discretion," and to prove deliberate indifference, the failure to send a plaintiff to a specialist must be "blatantly inappropriate." Id. The defendant, as a dentist, is a specialist in his own right, and, as discussed above, nothing about his treatment was blatantly inappropriate. As to the issues with the lab, the record shows that the defendant tried to address those issues; at least once, he contacted the lab to try to correct the problem before the plaintiff even had tried the dentures.

Because no reasonable jury could find that the defendant was deliberately indifferent to the plaintiff's serious medical need, the court will grant summary judgment in favor of the defendant.

3. Qualified Immunity

The defendant also argued that he was entitled to qualified immunity. Because the court grants summary judgment on the merits, the court does not need to address the qualified immunity argument.

**III. CONCLUSION**

The court **GRANTS** the defendant's motion for summary judgment (Dkt. No. 25)**.**

The court **DISMISSES** this case and will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 20th day of November, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**